UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JONATHAN CLIFFORD,

          Plaintiff,                    Case No. 1:24-cv-827

v.                                         Honorable Paul L. Maloney

J. DAWSON et al.,

          Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff initiated this action by filing his complaint (ECF No. 1) and motion for leave to proceed *in forma pauperis* (ECF No. 2) with the United States District Court for the Eastern District of Michigan. In an opinion and order (ECF No. 5) entered on August 12, 2024, the Eastern District transferred the action to this Court for further proceedings.

The Court will grant Plaintiff's motion for leave to proceed *in forma pauperis*. (ECF No. 2.) This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and

accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will dismiss Plaintiff's federal claims for failure to state a claim against Defendants Dawson, Smith, Washington, King, Berghuis, and Unknown Parties #1, 2, 3, and 4. Any purported state law medical malpractice claims against those Defendants will be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over such claims. The Court will also dismiss, for failure to state a claim, Plaintiff's official capacity claims against remaining Defendants Kissau, Brooks, and Jones. Plaintiff's personal capacity Eighth Amendment claims, as well as his medical malpractice claims, against Defendants Kissau, Brooks, and Jones remain in the case.

## Discussion

### I.   Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Central Michigan Correctional Facility (STF) in St. Louis, Gratiot County, Michigan.[1] The events about which he complains, however, occurred at the Earnest C. Brooks Correctional Facility (LRF) in Muskegon Heights, Muskegon County, Michigan. Plaintiff sues MDOC Director Heidi E. Washington, as well as the following LRF staff: Warden Mary Berghuis, Deputy Wardens B. Smith and Chris King, Facility Business Manager J. Dawson, Health Unit Manager Penny S. Brooks, Third Party Health Care Provider John Doe,[2] dietitian Lory R. Kissau, Kristen Jones,

---

[1] Offender Tracking Information System https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=880417 (last visited Feb. 21, 2025).

[2] Although Plaintiff uses "John Doe" to refer to this Defendant, based on the factual allegations set forth in the complaint, the Court construes Plaintiff's use of "John Doe" to refer to the healthcare provider that has contracted with the MDOC to provide healthcare to inmates at LRF and other institutions. The Court concludes so given that in the body of the complaint, Plaintiff does not use "John Doe" to refer to this Defendant, instead referring to it as "MDOC (3rd Party)

2

Unknown Party #2 (referred to as John Doe/Jane Doe Food Service Stewards), Unknown Party #3 (referred to as unknown healthcare employees), and Unknown Party #4 (referred to as unknown healthcare parties). Plaintiff sues Defendants in their individual and official capacities.

Plaintiff alleges that on or about June 18, 2023, he submitted several kites to the third-party healthcare provider "requesting urgent assistance" because Plaintiff is allergic to onions. (Compl., ECF No. 1, PageID.7.) Plaintiff alleges that when he eats onions, his tonsils swell, his throat closes up, and he experiences bloating and vomiting, as well as painful defecation. (*Id.*, PageID.10.) Plaintiff received no response to his kites. (*Id.*, PageID.7.) He submitted another kite on June 20, 2023.[3] (*Id.*) On June 22, 2023, Defendant Jones placed Plaintiff "on the [i]mproper diet of acid reflux." (*Id.*)

Plaintiff filed a grievance on June 22, 2023, but received no response. (*Id.*) Plaintiff "had to request to go directly to Step II d[ue] to the deliberate indifference in the filing of [his] Step I Grievance." (*Id.*) Plaintiff filed another Step I grievance concerning the matter. (*Id.*) Plaintiff alleges that this grievance "was responded to after [his] Step II Grievance was affirmed and was agreed in [his] favor according to Deputy Warden C. King." (*Id.*)

Plaintiff goes on to state that he was placed "on an [o]nion [a]llergy [d]iet very late." (*Id.*) He faults Defendants Jones, Kissau, Brooks, the third-party healthcare provider, and John Doe/Jane Doe healthcare employees for being deliberately indifferent to his health. (*Id.*)

---

Healthcare." (Compl., ECF No. 1, PageID.7.) Moreover, Unknown Parties #3 and 4 are referred as unknown healthcare employees, which would encompass any individual John Doe.

[3] In Plaintiff's complaint, he states that he submitted this kite on June 20, 2022. (Compl., ECF No. 1, PageID.7.) Based on the factual allegations in Plaintiff's complaint, his reference to 2022 appears to be a typographical error.

3

According to Plaintiff, Defendant Washington violated his rights by denying his Step III grievance and for failing to ensure that Plaintiff received an onion-free diet. (*Id.*, PageID.8.) He goes on to state that Defendant Berghuis allowed the food service to provide onion-filled foods. (*Id.*) Plaintiff faults Defendant Brooks for placing him on an acid reflux diet instead of "properly allergy testing" him. (*Id.*) Plaintiff goes on to state that Defendant Kissau placed him on the correct diet, but that he still continued to receive a diet that included options with onions. (*Id.*)

Plaintiff alleges further that Defendants Dawson and Smith violated his rights by delaying the processing of his grievance and for not acting upon the first grievance. (*Id.*, PageID.8–9.) Plaintiff contends that the John Doe/Jane Doe healthcare workers "refused to act on several healthcare requests that were submitted." (*Id.*, PageID.9.) He alleges that the John Doe/Jane Doe food service stewards allowed food with onions to be served. (*Id.*) Finally, he faults Defendant Jones for placing him on an acid reflux diet and failing to test him properly even after Plaintiff repeatedly told her that he was allergic to onions. (*Id.*)

Based on the foregoing, Plaintiff asserts claims for violations of his Eighth Amendment rights. The Court also construes Plaintiff's complaint to assert claims premised upon the handling of his grievances. Plaintiff seeks unspecified injunctive relief against Defendants in their official capacities, and compensatory and punitive damages against Defendants in their personal capacities. (*Id.*, PageID.9–10.) Plaintiff also suggests that he is seeking damages for "medical malpractice." (*Id.*, PageID.10.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels

4

and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

### A.     Section 1983 Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

#### 1.     Official Capacity Claims

Plaintiff brings claims against Defendants in both their individual and official capacities. Although an action against a defendant in his or her individual capacity intends to impose liability

on the specified individual, an action against the same defendant in his or her official capacity intends to impose liability only on the entity that they represent. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). A suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity: in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison*, 722 F.3d at 771.

As noted *supra*, Plaintiff indicates that he is seeking injunctive relief against Defendants in their official capacities. (Compl., ECF No. 1, PageID.9.) An official capacity action seeking declaratory and injunctive relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not

6

bar prospective injunctive relief against a state official). Importantly, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

Plaintiff's complaint does not allege an ongoing violation of federal law or seek relief properly characterized as prospective. Plaintiff has been transferred from LRF to a new correctional facility. The Sixth Circuit has held that transfer to another prison facility moots claims for declaratory and injunctive relief. *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Howard v. Heffron*, No. 89-1195, 1989 WL 107732 (6th Cir. Sept. 20, 1989); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). Underlying the rule is the premise that such relief is appropriate only where the plaintiff can show a reasonable expectation or demonstrated probability that he is in immediate danger of sustaining direct future injury as the *result* of the challenged official conduct. *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g., Lyons*, 461 U.S. at 102; *Alvarez v. City of Chicago*, 649 F. Supp. 43 (N.D. Ill. 1986); *Bruscino v. Carlson*, 654 F. Supp. 609, 614, 618 (S.D. Ill. 1987), *aff'd*, 854 F.2d 162 (7th Cir. 1988); *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). A court should assume that, absent an official policy or practice urging unconstitutional behavior, individual government officials will act constitutionally. *Lyons*, 461 U.S. at 102; *O'Shea*, 414 U.S. at 495–96. Accordingly, Plaintiff cannot maintain any official capacity claims for

injunctive or declaratory relief against Defendants and his official capacity claims will be dismissed in their entirety.

### 2. Claims Against Unknown Party #1 (Healthcare Provider)

As noted above, Plaintiff has named the healthcare provider for LRF as a Defendant in this matter, and the Court will refer to this provider as Unknown Party #1. The Court construes this Defendant to reference the healthcare provider who has contracted with LRF and the MDOC to provide healthcare to MDOC inmates.

The requirements for a valid § 1983 claim against a municipality apply equally to private corporations, such as the third-party healthcare provider, that are deemed state actors for purposes of § 1983. *See Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001) (recognizing that the holding in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), has been extended to private corporations); *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 409 (2d Cir. 1990) (same); *Cox v. Jackson*, 579 F. Supp. 2d 831, 851–52 (E.D. Mich. 2008) (same). "Under 42 U.S.C. § 1983, while a municipality can be held liable for a constitutional violation, there is no vicarious liability based on the acts of its employees alone." *Lipman v. Budish*, 974 F.3d 726, 747 (6th Cir. 2020) (citing *Monell*, 436 U.S. 690–91). Instead, a municipality "can be sued under § 1983 only when a policy or custom of that government caused the injury in question." *Id.* (citations omitted). "[T]he finding of a policy or custom is the initial determination to be made in any municipal liability claim." *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir. 1996). This policy or custom must be the moving force behind the alleged constitutional injury, and the plaintiff must identify the policy or custom, connect it to the governmental entity, and show that his injury was incurred because of the policy or custom. *See Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003). Consequently, the third-party healthcare provider's liability, like a municipality's liability, "must also be premised on some policy [or

8

custom] that caused a deprivation of [a prisoner's constitutional] rights." *Starcher*, 7 F. App'x at 465. Additionally, the third-party healthcare provider's liability in a § 1983 action cannot be based on a theory of respondeat superior or vicarious liability. *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citation omitted).

A policy includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated." *See Monell*, 436 U.S. at 690. Moreover, the United States Court of Appeals for the Sixth Circuit has explained that a custom "for the purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the force of law." *Doe v. Claiborne Cnty.*, 103 F.3d 495, 507 (6th Cir. 1996). "In short, a 'custom' is a 'legal institution' not memorialized by written law." *Id.*

Here, Plaintiff's only allegation is that he submitted several kites to the third-party healthcare provider and its employees regarding his onion allergy. Plaintiff's allegations against the third-party provider essentially rest on a theory of vicarious liability and, therefore, do not state a claim. Plaintiff's complaint is devoid of any facts showing the existence of a custom or policy maintained by the third-party healthcare provider that was the moving force behind his alleged constitutional injuries. *See Bilder v. City of Akron*, No. 92-4310, 1993 WL 394595, at *2 (6th Cir. Oct. 6, 1993) (affirming dismissal of § 1983 action when plaintiff's allegation of policy or custom was conclusory, and plaintiff failed to allege facts tending to support the allegation). Accordingly, for the reasons set forth above, Plaintiff fails to state a claim against Unknown Party #1 (the third-party healthcare provider).

### 3. Claims Against Defendants Washington, Dawson, Smith, King, Berghuis, and Unknown Parties #2, 3, 4

Plaintiff has also named MDOC Director Washington, as well as LRF Warden Berghus, LRF Assistant Wardens Smith and King, and LRF Facility Unit Manager Dawson as Defendants

9

in this matter. Plaintiff takes issue with Defendants Washington, Smith, King, and Dawson's handling of his grievances, and suggests that Defendant Berghuis "allowed the food service to provide approximately every food item . . . filled with [o]nions." (Compl., ECF No. 1, PageID.8.) Further, Plaintiff suggests that Unknown Parties #3 and 4, referred to as unknown LRF healthcare employees, "refused to act on several healthcare requests that were submitted," and that Unknown Party #2, referred to as food service stewards, allowed foods containing onions to be served.

As an initial matter, courts have repeatedly held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Moreover, Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Therefore, any intended procedural due process claim regarding Plaintiff's use of the grievance procedure and Defendants' responses to his grievances or kites will be dismissed.

Moreover, Plaintiff's First Amendment right to petition the government was not violated by Defendants' rejection of Plaintiff's grievances or their failure to respond to Plaintiff's complaints. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v.*

10

*Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Additionally, Defendants' actions (or inactions) have not barred Plaintiff from seeking a remedy for his complaints. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio*, 20 F. App'x 469, 470–71 (6th Cir. 2001).

Furthermore, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be

based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).

The Sixth Circuit has repeatedly summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff's complaint is devoid of any facts from which the Court could infer that Defendants Washington, Dawson, Smith, King, and Berghuis encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in that conduct. Moreover, Plaintiff's conclusory allegations of supervisory responsibility are insufficient to show that these Defendants were personally involved in the alleged violations of Plaintiff's constitutional rights. *See, e.g.*, *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers*, 368 F.3d at 888. Additionally, to the extent Plaintiff seeks to hold Defendants Washington, Dawson, Smith, King, and Berghuis liable for being deliberately indifferent to his onion allergy and healthcare needs, the Court notes that correctional officials who have no training or authority to supervise healthcare officials are entitled to rely on medical provider's judgment and cannot be held liable for healthcare officials' inadequate care. *See Winkler v. Madison Cnty.*, 893 F.3d 877, 895 (6th Cir. 2018); *Smith*

*v. Cnty. of Lenawee*, 505 F. App'x 526, 532 (6th Cir. 2012) ("[I]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004))); *see also Newberry v. Melton*, 726 F. App'x 290, 296–97 (6th Cir. 2018) (same); *Cuco v. Fed. Med. Ctr.-Lexington*, No. 05-CV-232-KSF, 2006 WL 1635668, at *21–22 (E.D. Ky. June 9, 2006) (holding that prison administrative officials were not liable for overseeing and second-guessing care given by medical officials).

  Likewise, Plaintiff has not alleged sufficient facts showing that Unknown Parties #2, 3, and 4 each engaged in active unconstitutional behavior. As an initial matter, nowhere does Plaintiff allege that any of the food service stewards (i.e., Unknown Party #2) were personally aware of Plaintiff's allergy and deliberately ignored it. Plaintiff alleges only that Unknown Parties #3 and 4 (i.e., unknown LRF healthcare employees and healthcare parties) failed to respond to several healthcare requests and that Unknown Party #2 (i.e., John Doe/Jane Doe Food Service Stewards) continued to serve foods containing onions. However, the Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citation omitted). Here, Plaintiff refers to unknown LRF healthcare employees and healthcare parties (i.e., Unknown Parties #3 and 4) and John Doe/Jane Doe Food Service Stewards (i.e., Unknown Party #2); however, "[s]ummary reference to a single, five-headed 'Defendants' [or staff/employees] does not support a reasonable inference that each Defendant is liable . . . ." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citing *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011))

13

Accordingly, for the reasons set forth above, Plaintiff's claims against Defendants Washington, Dawson, Smith, King, Berghuis, and Unknown Parties #2, 3, and 4 will be dismissed for failure to state a claim.

### 4. Claims Against Defendants Brooks, Kissau, and Jones

Plaintiff suggests that Defendants Brooks, Kissau, and Jones violated his Eighth Amendment rights by demonstrating deliberate indifference to his onion allergy.

"The Supreme Court has long recognized that the government has a constitutional obligation to provide medical care to those whom it detains." *Griffith v. Franklin Cnty.*, 975 F.3d 554, 566 (6th Cir. 2020) (citations omitted). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). Deliberate indifference may be manifested by a medical professional's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of

facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Here, Plaintiff alleges that he is allergic to onions and experiences several adverse reactions when he eats them. At this stage of the proceedings, the Court assumes, without deciding, that Plaintiff has adequately alleged the objective component of the relevant two-prong test. The Court, therefore, will consider whether Plaintiff has sufficiently alleged facts with respect to the subjective component for each remaining Defendant.

### a.    **Defendant Kissau**

With respect to Defendant Kissau, Plaintiff alleges only that she placed him on the correct diet after several months and after "believing [Plaintiff] enough to test [him] properly." (Compl., ECF No. 1, PageID.8.) Plaintiff also states in a conclusory fashion that despite being placed on the correct diet, "the diet still offered options [containing] [o]nions." (*Id.*) Plaintiff's allegations allow for an inference that Defendant Kissau was personally involved in the delays Plaintiff experienced in receiving allergy testing and being placed on the correct diet. While Plaintiff has by no means proven his Eighth Amendment medical care claim against Defendant Kissau, the Court will not dismiss Plaintiff's Eighth Amendment claim against her on initial review.

### b.    **Defendants Brooks and Jones**

Plaintiff alleges that Defendant Brooks was involved in placing Plaintiff on the initial acid reflux diet and refused to provide allergy testing in response to his healthcare requests. (Compl., ECF No. 1, PageID.8) Plaintiff alleges further that Defendant Jones placed Plaintiff on the acid reflux diet and refused allergy testing even though Plaintiff repeatedly told her that he was allergic to onions. (*Id.*, PageID.9.) Under these circumstances, although Plaintiff has by no means proven his Eighth Amendment medical care claims against Defendants Brooks and Jones, the Court will not dismiss Plaintiff's Eighth Amendment claims against them on initial review.

### B. Medical Malpractice Claims

As noted *supra*, Plaintiff suggests that he seeks damages for medical malpractice in addition to his § 1983 claims. Any such claims, however, would be brought pursuant to Michigan state law. However, § 1983 does not provide redress for a violation of state law. *See Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994).

Furthermore, when determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)). Here, because the Court has dismissed Plaintiff's federal claims against Defendants Dawson, Smith, Washington, King, Berghuis, and Unknown Parties #1, 2, 3, and 4, the Court declines to exercise supplemental jurisdiction over any purported medical malpractice claims against those Defendants, and such claims will be dismissed without prejudice. However, because Plaintiff's Eighth Amendment claims against Defendants Kissau, Brooks, and Jones remain pending, the Court will exercise supplemental jurisdiction over any medical malpractice claims against them.

### Conclusion

The Court will grant Plaintiff's motion for leave to proceed *in forma pauperis* (ECF No. 2). Moreover, having conducted the review required by the PLRA, the Court determines that Plaintiff's federal claims against Defendants Dawson, Smith, Washington, King, Berghuis, and Unknown Parties #1, 2, 3, and 4 will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Any purported state law medical malpractice claims against those Defendants will be dismissed without prejudice because the Court

16

declines to exercise supplemental jurisdiction over such claims. The Court will also dismiss, for failure to state a claim, Plaintiff's official capacity claims against remaining Defendants Kissau, Brooks, and Jones. Plaintiff's personal capacity Eighth Amendment claims, as well as his medical malpractice claims, against Defendants Kissau, Brooks, and Jones remain in the case.

    An order consistent with this opinion will be entered.

Dated:   February 27, 2025                     /s/ Paul L. Maloney
                                                             Paul L. Maloney
                                                             United States District Judge